[609 NYS2d 354]

In the Matter of the Claim of JOSEPHINE MIRANDA, Respondent, v DIVISION 1181 ATU—NEW YORK WELFARE FUND AND PLAN, Appellant. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, March 17, 1994

## APPEARANCES OF COUNSEL

*Wilfred L. Davis & Stephen Davis, P. C.,* New York City *(Stephen Davis, Miriam R. Adelman* and *Joy M. Holz* of counsel), for appellant.

*G. Oliver Koppell, Attorney-General,* New York City *(Jennifer S. Brand, Jane Lauer Barker, M. Patricia Smith* and *Theresa Wolinski* of counsel), for Workers' Compensation Board, respondent.

## OPINION OF THE COURT

Cardona, P. J.

Claimant is an employee of a transit company covered by a collective bargaining agreement with Division 1181 Amalgamated Transit Union (hereinafter the Division). Pursuant to Workers' Compensation Law § 211 (3) and (5), the Division is an approved self-insured provider of disability benefits to its covered employees. Claimant was injured in October 1990 when her parked car was struck by a truck driven by an employee of New York City. Claimant submitted a claim for disability benefits to her employer and the Division. Claimant's claim was rejected by the Division because she refused to sign a document allowing the Division to file a lien[1] on the

---

1. The "AGREEMENT AND DECLARATION OF TRUST AND PLAN of the DIVISION 1181 A.T.U.—NEW YORK WELFARE FUND AND PLAN", which the Division maintains is the source of disability payments to covered employees, provides as follows: "The Trustees may, in their discretion, file a lien for the amount of benefits provided herein, except death benefits, where an action is commenced by an eligible employee, his eligible dependent or a representative of any such individual, as the case may be, against a third party for injury, illness or disease inflicted upon the eligible employee or his eligible dependent."

first $50,000 of any third-party recovery she might obtain in an action against New York City.[2]

Claimant appealed this rejection to the Workers' Compensation Board (hereinafter the Board). The Workers' Compensation Law Judge (hereinafter WCLJ) found that Workers' Compensation Law § 227 prohibits compensation carriers from placing a lien on the first $50,000 of proceeds of a third-party action for disability benefits paid to a claimant in lieu of first-party benefits and is not preempted by the Employee Retirement Income Security Act (29 USC § 1001 *et seq.* [hereinafter ERISA]) because, pursuant to 29 USC § 1003 (b) (3), the plan is " 'maintained solely for the purpose of complying with applicable * * * disability insurance laws' ". The WCLJ consequently awarded claimant disability benefits. In a decision and amended decision, the Board affirmed the WCLJ's decision. This appeal by the Division followed.

ERISA contains a broad preemption provision which provides that it shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" (29 USC § 1144 [a]; *see, Matter of Morgan Guar. Trust Co. v Tax Appeals Tribunal,* 80 NY2d 44, 48). "[W]hile the Disability Benefits Law plainly is a state law relating to employee benefit plans, it is not pre-empted if the plans to which it relates are exempt from ERISA under § 4 (b) [29 USC § 1003 (b)]" *(Shaw v Delta Air Lines,* 463 US 85, 106). Among the plans exempt from ERISA coverage are those "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation laws or disability insurance laws" (29 USC § 1003 [b] [3]).

The primary issue before us is whether the Division's disability plan is "separately administered", in which event the antisubrogation provision of Workers' Compensation Law § 227 (1-a) would be enforceable, or a portion of a multibenefit plan, in which case ERISA regulation would be exclusive *(Shaw v Delta Air Lines, supra,* at 108).

New York permits employers to provide disability benefits through a multibenefit ERISA plan *(see,* Workers' Compensation Law § 211; *District of Columbia v Greater Washington Bd. of Trade,* 506 US —, —, 113 S Ct 580, 584-585; *Shaw v Delta Air Lines, supra,* at 108; *see also,* 12 NYCRR 355.6) as long as

---

2. Claimant eventually executed the document, which is being held in escrow pending the determination of this appeal, and the Division has paid benefits to her.

those benefits are "at least as favorable" as those mandated under the Disability Benefits Law (Workers' Compensation Law § 211 [5]). We have examined the document entitled "AGREEMENT AND DECLARATION OF TRUST AND PLAN of the DIVISION 1181 A.T.U.—NEW YORK WELFARE FUND AND PLAN" (hereinafter the Benefit Plan) submitted by the Division. In addition to disability benefits, the Benefit Plan provides hospitalization, major medical, dental, prescription drug, optical and life insurance benefits to eligible employees. Thus, there is simply no question that the Benefit Plan is a collectively bargained, multibenefit, employer/employee organization-sponsored "welfare plan" covered by ERISA (see, 29 USC § 1002 [1]; § 1003 [a]). In fact, the Board acknowledges the existence of this multibenefit plan and that it offers disability benefits.

The Board argues, however, that the Division created a second, separately administered disability plan by filing a plan on form "DB-801" pursuant to Workers' Compensation Law § 211 (5) and applying pursuant to Workers' Compensation Law § 211 (3) for approval to provide disability benefits on a self-insured basis. The Board contends that this separate plan is the disability plan to which Workers' Compensation Law § 227 (1-a) relates. We disagree. Our review of the documents filed on the application for self-insurance convinces us that the Benefit Plan is the only source of disability benefits chosen by the participating employers to comply with the Disability Benefits Law. The fact that these disability benefits are self-funded does not change the Benefit Plan into a separately administered plan.

We find that the Division's disability plan is not "maintained solely for the purpose of complying with [an] applicable * * * disability insurance law[ ]" (29 USC § 1003 [b] [3]) and, therefore, it is not exempt under ERISA. Furthermore, we find that Workers' Compensation Law § 227 (1-a) relates to a plan regulated by ERISA and is preempted. Accordingly, the antisubrogation provision set forth in Workers' Compensation Law § 227 (1-a) is unenforceable and the Benefit Plan is entitled to enforce its lien against the proceeds of any recovery claimant may have in a third-party action.

CASEY, J. (dissenting). In the exercise of its broad fact-finding power, the Workers' Compensation Board found that Division 1181 Amalgamated Transit Union (hereinafter the Division) had provided a separately administered disability

plan maintained solely to comply with the New York Disability Benefits Law. Because the record contains sufficient evidence to provide a rational basis for the Board's factual finding, I would affirm the Board's decision, regardless of whether there is also evidence to support a different finding.

Although the Division originally provided disability benefits pursuant to the disability benefits provisions of the multibenefit trust agreement executed in February 1986, the Division applied for and obtained approval, pursuant to Workers' Compensation Law § 211 (3), to pay disability benefits as a self-insurer in 1987. To qualify as a self-insurer, the Division made an "initial exposure deposit" of $51,000 and agreed to keep all employee contributions as trust funds separate and apart from all other funds, to be used only as permitted by the Disability Benefits Law. In November 1987, the Division filed with the Board a form "DB-801", which contains the following title and subtitles: "DISABILITY BENEFITS LAW", "PLAN OF AN ASSOCIATION OF EMPLOYERS OR EMPLOYEES, UNION OR TRUSTEES PROVIDING DISABILITY BENEFITS", "APPLICATION AND AGREEMENT". The form states that the Division "makes the following representations and agreements pertaining to its Plan under the Disability Benefits Law, *which is hereby filed as the Plan of the Employers*" (emphasis supplied). Pursuant to section 3 of the form, the plan covers "[a]ll employees covered by a collective bargaining agreement between their employer and the Union who are eligible under the New York State Disability Benefits Law". Section 7 contains a schedule of benefits, which describes the classes of employees covered by the plan and describes the benefits provided by the plan, using the term "STATUTORY", without reference to the multibenefit trust agreement. Based upon the Division's status as a self-insurer and the filing of the form "DB-801", the Board found that the Division had provided a separately administered disability plan solely to comply with the Disability Benefits Law.

The Division contends that there is no separate disability plan, and that the multibenefit trust agreement is the only plan and the only source of disability benefits. The majority reviewed the record and agreed with the Division. In so doing, however, the majority usurped the Board's fact-finding power by weighing the evidence and substituting its judgment for that of the Board, which is not this Court's function on an appeal from a decision of the Board (see, *Matter of Johnson v Moog, Inc.*, 114 AD2d 538). That there may be evidence in the record to support a finding other than that made by the Board

and that this Court disagrees with the Board's finding are irrelevant, for the only issue on this appeal is whether the Board's factual finding is supported by substantial evidence in the record *(see, Matter of Ribar v County of Suffolk,* 125 AD2d 801). In view of the evidence in the record from which the Board could rationally conclude that upon filing the form "DB-801" in November 1987 after becoming a self-insurer the Division established a separately administered disability plan maintained solely to comply with the Disability Benefits Law, the Board's decision cannot be disturbed.

MIKOLL, WHITE and YESAWICH JR., JJ., concur with CARDONA, P. J.; CASEY, J., dissents in a separate opinion.

Ordered that the decision and amended decision are reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.